IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

PAUL MINIX,                          }
TDCJ-CID NO.638154,                  }
       Plaintiff,                  }
                                     }
v.                                   }                    CIVIL ACTION G-03-115
                                     }
UNIT MAJOR UP HAYNES, *et al.*,      }
       Defendants.                 }

OPINION ON DISMISSAL

The pending civil rights suit has a long and convoluted history.  In December, 2002, plaintiff Paul Minix, a state inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint alleging that from October 2002 to December 2002, employees at the Ramsey Unit of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID"), namely, Major Haynes, Lt. Pitts, Sgt. Ramariz, Officer M. Williams, Mailroom Supervisor L. Smith, Gang Intelligence Officer Smith, and Lt. Burns, harassed and retaliated against him, distributed copies of his legal mail and materials, and discriminated against him. (Docket Entry No.1).  On March 20, 2003, the Court dismissed plaintiff's complaint for want of prosecution upon plaintiff's Motion for Voluntary Dismissal.  (Docket Entry No.11).  The case was reinstated upon plaintiff's motion on May 23, 2003.  (Docket Entry No.13).  Plaintiff amended his complaint on July 28, 2003.  (Docket Entry No.17).  In his first amended complaint, plaintiff sought relief from Ramsey Unit employees D. Stump of the Offender Correspondence Office, Assistant Warden K. Scott, Lt. D. Burns, Grievance Coordinator Mary Carroll, Officer J. Jordan, Officer Layla Wuttke, Lt. Curtis Pitts, Officer M. Williams, inmate Paul Gonzales, and UTMB Cardiologist Michael Davis on claims of retaliation, violations of due process, and

1

conspiracy, which allegedly occurred between December, 2002 and April, 2003.  (*Id.*).  On October 20, 2003, plaintiff amended his complaint to include additional charges against inmate Paul Gonzales.  (Docket Entry No.29).  Plaintiff filed two other motions to amend, which the Court denied.  (Docket Entry No.37).  On May 18, 2006, the Court ordered plaintiff to submit answers to interrogatories.  (Docket Entry No.42).  Plaintiff did not respond to the Order for Answers to Interrogatories and the Court dismissed the case for want of prosecution.  (Docket Entry No.47).  On July 10, 2007, the Fifth Circuit vacated the Court's order and remanded the cause for further proceedings.  (Docket Entries No.62, No.63).  On August 1, 2007, plaintiff filed a motion to amend, in which he indicated that he wanted to pursue claims against three defendants—Warden Scott, Officer C. Davis, and Sgt. C. Lewis.  (Docket Entry No.61).  On October 25, 2007, the case was reassigned to undersigned judge.  (Docket Entry No.64).  The Court granted plaintiff's motion to amend, and on November 28, 2007, plaintiff filed a third amended complaint against defendants Warden Kevin Scott and Officers Davis and Hoffman. (Docket Entry No.66).

In his third amended complaint, plaintiff complains that from November, 2003 through January 2004, defendants engaged in retaliatory acts, conspired to expose him to substantial harm from his enemies, and harassed him.  (*Id.*).  Defendants Kevin Scott and Franklin Hoffman[1] have filed a motion for summary judgment and a motion for a protective order.  (Docket Entries No.80, No.102).  Plaintiff has filed a response to the summary judgment motion and two motions to compel discovery.  (Docket Entries No.96, No.98, No.104).  For the reasons to follow, the Court will grant defendants' motion for summary judgment and dismiss plaintiff's complaint.

---

[1] Although the United States Marshal's Service has attempted service on several occasions, defendant Colvin Davis has not been served with process and therefore, has not filed an answer.

## I. CLAIMS

Plaintiff claims that the following events gave rise to his third amended complaint:  In November, 2003, plaintiff was housed in protective custody in administrative segregation ("ad-seg").  On November 28, 2003, plaintiff filed a life-endangerment grievance because inmates in nearby cells threatened him with physical harm.  Plaintiff claims that in early 2002, he had given information to an internal affairs investigator about one of the inmates, and that inmate was now housed in a cell close to plaintiff's cell.  On December 1, 2003, plaintiff appeared before the Unit Classification Committee ("UCC"), where Warden Scott presided over the investigation of plaintiff's life endangerment claim.  In spite of plaintiff's claims that he had been threatened, his grievance was denied and plaintiff was forced to live with the threat of harm.

On December 3, 2003, plaintiff filed a second life-endangerment grievance after he was threatened by the same inmate.  Sgt. Villareal of gang intelligence filed the report.  On December 4, 2003, plaintiff explained to the State Classification Committee ("SCC") at its bi-annual Unit hearing that he was living with enemies who threatened him with harm.  The SCC instructed Warden Scott to document the names of plaintiff's enemies and to forward the file with such names to the SCC; the SCC promised that upon receipt of the files a transfer would be arranged.  On December 5, 2004, the UCC met and Scott considered plaintiff's December 3rd life-endangerment grievance.  Scott informed plaintiff that he would not document plaintiff's enemies or forward the information to the SCC; Scott said that plaintiff created his problem and would have to live with it.

On December 7, 2003, plaintiff reported more threats to Sgt. Lewis, who filed another life-endangerment grievance with Warden Scott.  Scott would not process the grievance and would not move plaintiff to another cell.

On December 11, 2003, plaintiff reported more threats to Lt. Babcock, who filed a fourth life-endangerment grievance.  On December 12, 2003, Scott held another UCC hearing and indicated that he would move plaintiff to another cell away from his enemies.  After the hearing, plaintiff asked Scott if he would be moved today, to which Scott replied that he wanted to catch the enemies in the act of assaulting plaintiff before he moved him.

During this time, Major Lumpkins and Sgt. Lewis posted a message on the bulletin board in ad-seg stating that staff should not allow plaintiff to recreate with certain inmates, namely, Estrada, Flores, Garza, Valdez, and forty-five other inmates.  On December 19, 2003, Officers Davis and Hoffman erased the message and took plaintiff to the dayroom next to Estrada and Valdez, who repeatedly threatened plaintiff for two hours.  The officers heard the threats and laughed about them.   Plaintiff filed a life-endangerment grievance against them for placing him in danger, but Warden Scott ignored the threat and endorsed the staff's misconduct.

On December 20, 2003, plaintiff plugged the toilet in his cell so that he would be moved away from his enemies.  Plaintiff was moved eleven cells down the hall.

On December 22, 2003, while in a holding tank awaiting transfer to the infirmary because of chest pain, plaintiff saw Sgt. Wade give Officer Davis a copy of the life-endangerment grievance that plaintiff had filed on December 19th.  Wade told Davis that he had to respond to the grievance.  Because the officers would not take him to the clinic, plaintiff requested to be taken back to his cell so that he could retrieve medication for the pain.  Davis told plaintiff that he would take him when he gets time.  Plaintiff attributed Davis's response to

4

the fact that Davis was still reading the grievance that plaintiff had filed against him.  Plaintiff complained that his left side was numb and that he needed his pills.  The officers ignored him. Plaintiff then kicked the holding cage door and fell to the floor in pain.  He remained on the floor for thirty minutes before medical personnel were called.  He was then taken by wheelchair to the infirmary.  Medication was administered and plaintiff was released to his cell shortly thereafter.

While plaintiff was in the infirmary, Officers Davis and Hoffman combed plaintiff's cell; they went through his legal work and personal papers related to his enemies and trashed the cell by scattering property on the cell floor.  Hours later, Davis and Hoffman took plaintiff to recreation in the yard next to the yard where plaintiff's enemies were recreating. Plaintiff told Sgt. Wade that he wanted to file another life-endangerment grievance against Davis and Hoffman for jeopardizing his safety and for retaliating against him for the grievance he filed on December 19th.

Later that day, Sgt. Wade called plaintiff to the front to process the grievance. While plaintiff was out, Davis and Hoffman returned to plaintiff's cell; they took plaintiff's radio and scattered his property once again.  Davis brought confiscation papers for plaintiff to sign for the radio but not for the legal material that Davis confiscated.  Davis wrote a false disciplinary charge against plaintiff.  Sgt. Wade filed another life-endangerment grievance against Davis and Hoffman; Warden Scott ignored the grievance.

On December 23, 2003, Sgt. Lewis found plaintiff's radio sitting on top of a file cabinet.  Because Lewis did not know why the radio had been taken, he returned it to plaintiff. Plaintiff filed yet another life-endangerment grievance against Davis and Hoffman for placing plaintiff in danger during recreation and erasing Lewis's instructions on the bulletin board.  Scott again ignored the grievance.

On December 24, 2003, Officer Davis heard plaintiff's enemies threaten him as plaintiff returned from the shower. Davis laughed, and told the inmates that plaintiff deserved such action because all he did was write them up.

On December 28th, Davis and Hoffman pulled plaintiff from his cell to conduct a "shake-down." Plaintiff was placed in a holding cell for about an hour. When he returned to his cell, plaintiff found coffee powder on the floor and inside the toilet. The antenna from plaintiff's radio had been removed and his property scattered all over the floor.

On January 11, 2004, plaintiff filed a life-endangerment grievance against Davis and Hoffman, in which he alleged that the officers harassed and retaliated against him because he had filed grievances against them and that his enemies had continued to threaten him. Scott ignored the grievance. The same day, inmate Roger Martinez prepared a witness statement on plaintiff's behalf, but Officer Morgan and Sgt. Lewis confiscated the document from Martinez's cell. Lewis wrote plaintiff a disciplinary case, but the case was dismissed.

On January 13, 2004, Davis and Hoffman pulled plaintiff out of his cell and scattered his property in an effort to intimidate plaintiff for trying to get witnesses against them. On the same day, Warden Scott held a UCC hearing, where he joked about plaintiff's claims of retaliation by Davis and Hoffman and about plaintiff's claims that he was threatened by other inmates.

On January 29, 2004, Davis and Hoffman took plaintiff to the shower and left him there for one and one-half hours, while they ransacked his cell. The officers had emptied a new water bottle and threw it on the walkway. Davis confiscated plaintiff's hat and tore another antenna out of his radio. They scattered plaintiff's property over his cell and tore a page from a legal encyclopedia. When questioned why plaintiff was being singled out for searches, Davis

told plaintiff that as long as plaintiff continued to file grievances, he would pay plaintiff back however he could.  Davis threatened to come into plaintiff's cell daily and take whatever he wanted and write a disciplinary case "for anything."  Plaintiff claims that Davis filed three false and retaliatory major disciplinary cases against him during this period because plaintiff filed grievances against him.  (Docket Entry No.66).  Plaintiff was transferred to another unit in February, 2004.  (Docket Entry No.96).

Plaintiff seeks compensatory damages from defendants on the following grounds:

1.    Officer Davis filed false disciplinary cases against plaintiff, trashed his cell and property, and harassed plaintiff for filing grievances against him;

2.    Officer Hoffman conspired with Davis to punish plaintiff for filing grievances by trashing his cell repeatedly and harassing plaintiff;

3.    Warden Scott violated plaintiff's rights under the First and Fourteenth Amendments.

Plaintiff also seeks punitive damages from defendants on the following grounds:

1.    Officer Davis made plaintiff suffer with severe chest pain in the holding cage and intentionally ignored plaintiff's request to get his heart medicine in retaliation for the grievance that plaintiff had filed against him;

2.    Officer Hoffman caused plaintiff to suffer fear and severe anxiety, which resulted in ongoing chest pain, when Hoffman recreated plaintiff with his enemies, who threatened him with death;

3.    Warden Scott deliberately endorsed staff retaliation and allowed plaintiff to be victimized by his enemies with threats of harm.

(*Id*.).

Defendants Scott and Hoffman move for summary judgment on grounds that they are entitled to qualified immunity on all claims and that plaintiff has not satisfied the physical

injury requirement of the Prison Litigation Reform Act or the Eighth Amendment to warrant compensatory damages.  (Docket Entry No.80).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  A section 1983 complainant must support his claim with specific facts

demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

<u>A. Compensatory Damages</u>

Defendants contend that plaintiff has not alleged that he suffered a compensable physical injury and therefore, cannot recover monetary damages on any emotional or mental injury from any alleged constitutional violation. (Docket Entry No.80). "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury." 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that "[s]ection 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury").

<u>1. Scott and Hoffman</u>

Plaintiff does not allege in his amended complaint that he suffered a specific physical injury from any of Warden Scott's or Officer Hoffman's alleged constitutional violations. Therefore, he fails to state a claim for compensable damages for any mental or emotional injuries attributable to the acts or omissions of Warden Scott or Officer Hoffman.

In his response to the motion for summary judgment, plaintiff claims that he has a chronic heart condition for which he takes medication; he contends that defendants' alleged misconduct and his living arrangement caused him to suffer severe physiological stress, anxiety attacks, and chest pain, which required medical attention. (Docket Entry No.96). The Court

notes that severe chest pain can be indicative of a serious medical need in a cardiac patient.  *See e.g., Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006).  Plaintiff's allegations of chest pain attributable to Scott or Hoffman, however, are conclusory.  Plaintiff states no specific dates, times, or incidents wherein he suffered severe chest pains attributable to Scott or Hoffman's acts or omissions.  Accordingly, defendants are entitled to summary judgment on this ground.  All claims for compensatory damages against defendants Scott and Hoffman are, therefore, subject to dismissal.

2. Davis

Plaintiff does not allege a specific compensable physical injury attributable to Officer Davis except for a claim that Davis disregarded plaintiff's complaints of severe cardiac pain and numbness to the left side of his body in retaliation for plaintiff filing a grievance against him.  (Docket Entry No.66).  Plaintiff complains of the same in his amended pleading, as follows:

> On December 22, 2003, Minix was taken and placed in a holding cage to be taken to the infirmary due to chest pain, as already ordered by Physician Ms. Abraham; as Minix was waiting to be taken, Sgt. Wade came in ad seg with a grievance in his hand and handed it to Davis telling him he had to respond to a life endangerment that I filed on him.  Because Sgt. Wade, Davis, Hoffman and other staff would not take me to the clinic, I asked to go back to my cell to get my nitroglycerin.  Davis said, "when he gets time"- he was still reading my grievance.  Minix explained to all the staff that my left side was going numb and I need my pills.  They all ignored me.  Minix then, being next to the entrance door to ad seg, kicked on the holding cage door to get another supervisor's attention for medical assistance, but after three kicks my chest pain dropped me, and my entire left arm and leg went numb, and I stayed on the floor in the cage 30 more minutes before medical was called and came and got me in a wheelchair.
>
> . . . The medical department administered nitroglycerin and the pain and numbness subsided.  Minix was monitored by medical staff in the infirmary for 30 more minutes before being released.

10

(Docket Entry No.66, pages 8-9).

Plaintiff was not as explicit about the events of December 22, 2003, in the grievances that he filed after the incident.  In Step 1 Grievance No.2004073109, plaintiff stated that on December 22, 2003, the ad-seg correctional staff was written up for recreating plaintiff with his enemies.  (Docket Entry No.81-1, page 14).  Plaintiff also stated in the grievance that about 9:00 a.m. on the same day, he was placed in the front holding cage awaiting a transfer to the clinic because he was experiencing chest pains.  (*Id*.).  Plaintiff complained that instead of taking him to the clinic, Sgt. Wade took another offender to the dentist, so plaintiff asked to return to his cell to get his medication.  (*Id*.).  Officer Davis told plaintiff that he would take him when "he gets time."  (*Id*.).  Plaintiff made no reference in the grievance as to why Davis did not have time to take him at that moment.  Plaintiff stated that he then told the staff nearby that he had serious chest pains and that he needed medication.  (*Id*.).  Plaintiff claimed that "Ms. Garrett said if it was up to her she'd leave [plaintiff] in the holding cage to die"; maybe then he'd "stop writing them up."  (*Id*.).  Plaintiff indicated in the grievance that emergency medical personnel eventually took him to the infirmary in a wheelchair.  (*Id*.).

Plaintiff did not complain in his Step 2 Grievance that Davis retaliated against him by refusing or delaying medical treatment for plaintiff's chest pains or that his disregarded his cry for medication.  (Docket Entry No.81, page 12).  Instead, plaintiff complained that when Davis got plaintiff's grievance on December 22, 2003, Davis retaliated by taking plaintiff's radio and legal material and by filing two disciplinary cases against plaintiff.  (*Id*.).

The TDCJ investigator's report of the incident stated that the medical department determined that "staff did in fact act appropriately as they retrieved his medication and Sgt. Garret requested medical attention."  (Docket Entries No.81-1, page 3; No.83-13, page 3).  The

report also stated that the medical staff indicated that plaintiff was not in any danger.  (Docket Entries No.81-2, pages 2, 6).  The report was supported by the statement of an inmate who was in the cage with plaintiff; the inmate stated that plaintiff was faking a heart attack.  (Docket Entries No.81-2, page 10; No. 81-3, page 5).

In his unsworn declaration attached to his response to the summary judgment motion, plaintiff alleges a different sequence of events than those that he originally stated in his amended complaint and his Step 1 grievance.  Plaintiff states in such declaration that on December 22, 2003, Sgt. Wade left him in the holding cage with chest pain, while Wade took another inmate to the dental department.  (Docket Entry No.96-4, page 11).  Plaintiff asked Davis and Hoffman to go to his cell and get his medication while plaintiff waited in the holding cage to be taken to the infirmary, but they refused.  (*Id*.).  Plaintiff claims he told both officers that his pain had worsened but they ignored him.  (*Id*.).  To get a supervisor's attention, plaintiff kicked the cage door three times and collapsed because of the chest pain and numbness to his left side.  (*Id*.).  Plaintiff states that Hoffman and Davis ignored him while he lay on the cage floor.  (*Id*.).  Thereafter, Sgt. Wade returned and handed Davis a copy of the December 20th life-endangerment grievance that plaintiff had written against Davis and Hoffman.  (*Id*., pages 11-12).  Sgt. Wade then called for a wheelchair and the medical department took plaintiff to the infirmary, where he was given medication that immediately relieved the chest pain and numbness.  (*Id*., page 12).

A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  To state a valid claim for retaliation under § 1983, an inmate must allege more than his personal belief that he was the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310

(5th Cir. 1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). He must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The inmate must allege facts showing that a defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (citation omitted). He must also show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

From this record, the Court finds that on December 22, 2008, plaintiff indeed complained of chest pain to ad-seg officers, including Officer Davis, and Davis did not respond to plaintiff's complaints. Neither defendants' summary judgment proof nor plaintiff's unsworn statement show that Officer Davis was aware on the morning of December 22, 2003, that plaintiff had filed a grievance against him; nor does the record show that Davis refused to respond to plaintiff's plea for assistance with any retaliatory intent. At most, the summary judgment record shows that Davis indicated that he would assist plaintiff when he had time and that other officers assisted plaintiff.

Moreover, the record shows that plaintiff did not suffer substantial harm from the delay in receiving medical attention or medication. Without factual support, plaintiff's allegations of retaliation and/or deliberate indifference to serious medical need are legally frivolous and subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). *See Mendoza v. Lynaugh*,

989 F.2d 191, 195 (5th Cir. 1993) (finding guard's delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm). Plaintiff alleged no other claim of physical injury against Davis; therefore, he fails to show his entitlement to compensatory damages from defendant Davis.

### B. Punitive Damages

Plaintiff also seeks punitive damages from defendants.  (Docket Entry No.66). The physical injury bar of § 1997e(e) does not bar a prisoner's right to recover punitive damages for a constitutional violation.  *Hutchins v. McDaniels*, 512 F.3d 193, 196-98 (5th Cir. 2007).  To warrant punitive damages, plaintiff must allege facts showing that defendants' conduct was egregious or reprehensible.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  Punitive damages may be awarded in § 1983 cases when the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. . . . The latter standard requires recklessness in its subjective form, *i.e*., a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."  *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

### 1. Scott

Plaintiff seeks punitive damages from Warden Scott on grounds that Scott deliberately endorsed staff retaliation.  (Docket Entry No.66).  Liability based on supervisory capacity exists only if supervisor is personally involved in constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation.  *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  Plaintiff does not allege, and the record does not show that Scott was personally involved in any retaliatory scheme, conspiracy, or medical claim except to the extent that he may have denied plaintiff's

grievances.  (Docket Entries No.80-3, page 6; No.80-5, page 8; No.80-8, page 4; No.81, page 15; No.81-5, page 3; No.82-4, page 10; No.82-7, page 6; No.82-13, page 3; No.82-16, page 8; No. 106-2, page15).  An inmate does not have a constitutionally protected liberty interest in having grievances or complaints resolved to his satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).  Nor does the record reflect that Scott instituted a policy that would deprive plaintiff of his constitutional rights.

Plaintiff also seeks punitive damages on the ground that Scott allowed plaintiff's enemies to victimize him by their threats when he refused to transfer plaintiff to a different cell and refused to send plaintiff's records to the SCC so that plaintiff could be transferred to another unit.  (Docket Entry No.66).  Prison officials have a duty to protect inmates from harm or violence by other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a failure-to-protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  *Id.* at 834; *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995).  To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient.  *See id.*; *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

The record reflects that plaintiff's claims of life-endangerment were investigated and found to be unsubstantiated or uncorroborated and that that no administrative action was warranted.  (Docket Entries No.83-13, pages 2-4, No.83-16, pages 2-4).  The record also reflects

that the grievances that plaintiff filed complaining that Scott was unresponsive to the life-endangerment grievances and that he refused to send a list of plaintiff's documented enemies to the SCC were denied because there was no evidence to substantiate or corroborate plaintiff's claims of life-endangerment.  (Docket Entries No.80-6, page 8; No.81-1, page 13; No.81-6, pages 6, 8; No.81-9, page 12; No.81-10, page 2; No.82-10, pages 3, 5).  "[R]esponding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's protective duties under the Eighth Amendment. *Longoria v. Texas,* 473 F.3d 586, 594 (5th Cir. 2006).  Without evidence to contravene proof that administrative action was unwarranted or that Warden Scott failed to conduct an investigation, plaintiff cannot show that Warden Scott acted with an evil intent or with a reckless, callous, or criminal indifference to his constitutional rights.  Accordingly, plaintiff is not entitled to punitive damages from Warden Scott.

## 2. Davis and Hoffman

Plaintiff seeks punitive damages from Officer Davis on his claim that Davis ignored his request for his heart medication in retaliation for the grievance that plaintiff had filed against him.  (Docket Entry No.66).  As previously discussed, plaintiff's grievances and his unsworn declaration, and defendants' summary judgment evidence do not show that Davis failed to respond or intentionally delayed his response because of some evil motive or calloused or reckless disregard for plaintiff's serious medical needs.

Plaintiff also seeks punitive damages from Officers Hoffman and Davis on other grounds.  Plaintiff contends that on December 19, 21, and 22, 2003, Davis deliberately placed plaintiff's life in danger by allowing plaintiff's enemies to victimize him as sport and that Hoffman recreated plaintiff with known enemies who threatened his life.  (Docket Entry No.66).

16

Plaintiff claims in his amended pleading that on December 19, 2003, Davis and Hoffman intentionally erased an instruction given by superior officers on the ad-seg information board, which stated that plaintiff should not be recreated with certain inmates; thereafter, the officers recreated him in the dayroom with enemy-offenders Estrada and Valdez, who threatened him for two hours.  (*Id.*, pages 5, 8).  Plaintiff complained in Step 1 Grievance No.2004071707 dated December 22, 2003, that on December 19, 2003, "ad seg staff recreated me with my enemies," where Estrada threatened plaintiff and told him that he was going to cut plaintiff's throat when he got a chance.  (Docket Entry No.81-5, page 3).  In his response to the grievance, Warden Scott indicated that no evidence was found to substantiate plaintiff's life-endangerment claim.  (*Id.*).  The investigation reports attached to defendants' summary judgment motion support Scott's response.  (*Id.*, pages 4-17).

Plaintiff also claims in his amended complaint that on December 22, 2003, Davis and Hoffman took him to a recreation area next to the yard where his enemies--inmates Valdez and Estrada—were recreating and where he was again threatened.  (Docket Entry No.66, page 6). Plaintiff claims he filed another life-endangerment grievance on December 23, 2003.[2]  (*Id.*).  A copy of the grievance is not in the record.  However, Sgt. Lewis's Investigation Report dated December 23, 2003, indicates that an investigation of plaintiff's grievance showed that on December 22nd, plaintiff was again placed in the yard area with group 8 offenders and the

---

[2]  In Step 1 Grievance No.2004073875, dated December 28, 2003, plaintiff complained of staff retaliation since December 22nd when he filed a grievance against Davis and Hoffman for erasing the supervisor's orders off the bulletin board and recreating him with his enemies on December 19 and 22.  (Docket Entry No.80-8, page 13).

In Step 2 Grievance No.2004063429, dated December 28, 2003, plaintiff complained that on December 19 and 22, officers Davis, Holt, Hoffman and Garrett purposefully placed him on the recreation yard with his enemies and he was repeatedly threatened.  (Docket Entry No.82-10, page 3).  He complained that Sgt. Wade made no effort to correct the staff's misconduct.  (*Id.*).  Plaintiff had not complained of the same in his Step 1 Grievance.  Assistant Regional Director Guyton responded that after further investigation, plaintiff was appropriately housed and classified.  (*Id.*, page 3).

statement that plaintiff was not to recreate with said offenders had been erased from the Information Board.  (Docket Entry No. 81-1, page 2).  Lewis stated in the report that another inmate on the yard had reported that "everything was fine on the yard; no exchanges of any kind."  (*Id*.).  In his report to Warden McKnight, Major Lumpkins reported that plaintiff was not placed in the same yard with group 8 offenders but he was placed on the recreation yard at the same time that these offenders were on other recreation yards.  (Docket Entry No.81-2, page 4).  Lumpkins attributed plaintiff's complaint regarding the recreation issues to plaintiff's attempt to manipulate a move to a cell closer to another inmate.  (*Id*.).

Plaintiff acknowledges in his unsworn declaration in support of his response to the motion for summary judgment that he was not recreated in the same dayroom or yard as his alleged enemies.  (Docket Entry No.96-4, pages 10-12).  Plaintiff states that on December 19, 2003, he was recreated in a dayroom across from the area where offenders Estrada and Valdez were located.  (*Id.*, page 10).  He claims on December 22, 2003, Davis and Hoffman sent him to recreation in a yard next to Estrada and Valdez for two hours and laughed about it in retaliation for the December 20th grievance.  (*Id.*, page 12).

Plaintiff also claims that on December 21, 2003, "Davis was listening to many of my enemies threaten me on my way back from showering; Davis laughed with them and even told them, 'I would deserve it because all I do is write them up.'"  (Docket Entry No.66, page 11).  In Step 1 Grievance No.2004071707 dated December 22, 2003, plaintiff complained that on December 21, 2003, inmates Garza, Flores and Franco told plaintiff as he waited to shower that "they were waiting on me."  (Docket Entry No.81-5, page 2).  Plaintiff claimed that he refused his shower and Garza and Flores indicated that they would get him another day.  (*Id.*).  Plaintiff stated that Davis participated with the offenders and said that plaintiff "would deserve it because

of writing him up before." (*Id.*). Plaintiff maintains that Garza and Flores were planning on "spearing" him in the face with hot water. (*Id.*). Warden Scott indicated in his response that no evidence was found to substantiate plaintiff's life-endangerment claims. (*Id.*). The investigation reports attached to defendants' summary judgment motion support Scott's response. (*Id.*, pages 4-17).

In his report to the TDCJ Ombudsman Office regarding a letter that plaintiff had written, Lt. R. Babcock reported that after a thorough investigation of plaintiff's claim that he was being recreated with enemies on the unit, investigators had found that plaintiff had no documented enemies on the Ramsey Unit.[3] (Docket Entry No.83-13, page 2). Babcock also reported that investigators were unable to corroborate by their interviews with officers and other offenders in close proximity to plaintiff, plaintiff's claims that Davis had encouraged other offenders to do something to him and that Davis took no action when other offenders threatened plaintiff in Davis's presence (*Id.*, page 3). Babcock reported that the investigation, however, "revealed a documented history of [plaintiff] manipulating the classification system to gain favorable decisions, a pattern of lies, manipulation of other offenders, and the manufacturing of false statements to aid in the removal of staff that impose Agency policy and procedure." (*Id.*).

Plaintiff, nevertheless, claims that there were many witnesses to the threats of other offenders and to Davis's actions but no one would come forward because they feared staff harassment. (Docket Entry No.96). In support of such claim, plaintiff attached to his response to summary judgment motion the unsworn declaration by inmate Martin T. Franco, one of the three

---

[3] A non-party investigator found that plaintiff was not placed in the same yard with the offenders that plaintiff regards as enemies although he was placed in a recreation yard at the same time these alleged enemies were being recreated in other yards. (Docket Entry No.80-9, page 6)

offenders that plaintiff claimed threatened him outside the shower.   (Docket Entry No.96-4, pages 2-3).

In his unsworn declaration, Franco states that many other Mexican inmates in ad-seg threatened plaintiff with death in 2002-03 and that Davis and Hoffman allowed such threats. (*Id.*, page 2).   Franco also states that he wrote a statement against plaintiff on December 22, 2003, to protect himself from harassment from Davis and Hoffman.   (*Id.*).

In his original statement on December 22, 2003, written in response to an accusation that Franco and others[4] had threatened plaintiff outside the shower,  Franco stated that he ceased associating with plaintiff because plaintiff called him a "homosexual name by habit."   (Docket Entry No.83-9, page 13).   Franco further stated that plaintiff "got offended and commenced a paper trial action against me by shifting me into another incident between him and I that he is having with other inmates concerning trickery in signing statements against correctional officers that I have spoken to them about what."   (*Id.*).

Neither plaintiff's and Franco's declarations show that Davis and Hoffman engaged in retaliatory acts that endangered plaintiff's safety on December 19, 21, and 22, 2003. Plaintiff concedes he was not "recreated" in the same room or on the same yard with offenders that he believed to be enemies although he was placed in a recreation area close to where such offenders were recreated.   Moreover, he fails to overcome summary judgment proof, which shows that none of his claims of life-endangerment were substantiated and that the inmates he said threatened him were his "documented" enemies.   Finally, Franco states no specific facts to

---

[4] The other inmates accused of threatening plaintiff also gave statements to investigating officers regarding their relationship with plaintiff.   (Docket Entry No.83-9, pages 7-12).   No inmate gave a statement against plaintiff or for Davis and Hoffman.

show that plaintiff was threatened on the specific dates at issue, or that Davis and Hoffman responded inappropriately to such threats on those dates.

Because plaintiff has not presented proof contravening a record that shows that his life-endangerment claims against Officers Davis and Hoffman were unsubstantiated, he fails to show that Davis and Hoffman acted with the requisite intent that would entitle him to punitive damages.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.     Plaintiff's claims against all defendants named in any pleading filed before plaintiff filed his third amended complaint on November 28, 2007, (Docket Entry No.66) are DISMISSED. Plaintiff indicated in his third amended complaint that he no longer wished to pursue claims against these defendants.

2.     Defendants Scott and Hoffman's motion for summary judgment (Docket Entry No.80) is GRANTED.  All claims against defendants Scott and Hoffman are DISMISSED WITH PREJUDICE.

3.     All claims against defendant Calvin Davis are DISMISSED WITH PREJUDICE, as legally frivolous pursuant to 28 U.S.C. § 1914(e)(2)(B).

4.     Plaintiff's motions for discovery (Docket Entries No.98, No.104) are DENIED.  Plaintiff seeks discovery of records outside the dates of the events of which he complains in the pending action and therefore, his request is overly broad and general.  Plaintiff does not indicate that he has been denied access to records attached to defendants' motion for summary judgment or that specific documents from the relevant time period are missing.

5.     All other pending motions are DENIED, AS MOOT.

It is so ORDERED.

SIGNED at Houston, Texas, this 26th day of March, 2009.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE